UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| QFS Transportation, LLC, | ) |
| | ) |
| Plaintiff, | ) Case No.: 1:21-cv-00769 |
| | ) |
| vs. | ) Judge Michael R. Barrett |
| | ) |
| Robyn Huguely, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**OPINION AND ORDER**

This matter is before the Court on the pro se Motion to Dismiss, and/or in the alternative, to Transfer Venue by Defendant Robyn Huguely.  (Doc. 14).  Plaintiff QFS Transportation, LLC filed a memorandum in opposition.  (Doc. 22).  Defendant Huguely filed a reply (Doc. 25) that she also captions a Motion to Strike (Doc. 26).  As explained below, Defendant Huguely's Motion to Dismiss, alternative Motion to Transfer Venue, and Motion to Strike all will be DENIED.

**I.    BACKGROUND**

Plaintiff QFS Transportation, LLC ("QFS") is a Nevada limited liability company and registered to do business in Ohio, with its principal place of business located here in Hamilton County, Ohio.  (Doc. 1 (¶ 1)).   Defendant Robyn Huguely ("Huguely") is a resident of Newnan, Georgia and is a principal and officer of co-Defendant Queen Logistics, LLC ("Queen").  (*Id.* (¶ 2)).  Queen is a Georgia limited liability company with a principal place of business located in Jonesboro, Georgia.  (*Id.* (¶ 3)). Defendant Mercury Transportation, Inc. d/b/a World Logistics USA, LLC ("Mercury") is a New Jersey

1

corporation with its principal place of business located in Allentown, New Jersey. (*Id.* (¶ 4)).

QFS is a federally registered motor carrier that, among other things, provides third-party logistics services throughout the United States. (Doc. 1 (¶ 10)). QFS engages independent contractors as agents to perform services for existing QFS customers in a given local market, as well as to develop additional business there. (*Id.* (¶11)). On July 22, 2020, QFS and Queen entered into an Agreement for Regional Business Development ("Agreement") that included sections governing "Exclusivity", "Non-Competition", and "Non-Solicitation". (*Id.* (¶ 19)). Among its duties, Queen was to develop and solicit freight transportation exclusively for QFS in the southeastern region of the United States. (*Id.* (¶ 21)). Huguely personally and expressly guaranteed all of Queen's obligations to QFS under the Agreement. (*Id.* (¶ 20); Doc. 1-1 PAGEID 23 & (¶ 2(E)). QFS alleges that it terminated its relationship with Queen on September 13, 2021 and, thereafter, Queen entered into a relationship with Defendant Mercury—a direct competitor of QFS—to perform the same services as it performed for QFS. (Doc. 1 (¶¶ 31–33)). On November 19, 2021, QFS sent a cease-and-desist letter to both Huguely and Queen. (Doc. 1-2). QFS sent a letter to Mercury the same date. (Doc. 1-3). By return correspondence through counsel, Mercury denied any wrongdoing. (Doc. 1-4).

On December 10, 2021, QFS filed a Verified Complaint for Temporary Restraining Order, Injunctive Relief, and Damages against Huguely/Queen for breach of contract[1]; against Huguely/Queen and Mercury for violations of Ohio's Uniform Trade Secrets Act

---

[1] (Doc. 1 (¶¶ 46–53, 54–59)).

("OUTSA"), Ohio Rev. Code § 1333.61–.69[2]; and against Mercury for tortious interference with a contract (the Agreement between Huguely/Queen and QFS)[3]; and against Huguely/Queen and Mercury for tortious interference with business relationships (between QFS and its (current and prospective) agents, owner-operators, drivers, and customers)[4].[5] As required under the local rules,[6] QFS filed a separate Motion for Temporary Restraining Order and Preliminary and Permanent Injunction. (Doc. 8). The Court subsequently allowed QFS the opportunity to supplement its Motion.[7] (Doc. 12). On January 6, 2022, Defendant Huguely, proceeding *pro se*,[8] filed a single memorandum in opposition to QFS's Motion for Temporary Restraining Order (Doc. 13) and in support of a Motion to Dismiss, and/or in the alternative, to Transfer Venue (Doc. 14).[9] On January 20, 2022, QFS filed a combined reply in support of its Motion for Temporary Restraining Order (Doc. 21) and memorandum in opposition to Huguely's Motion to Dismiss, and/or in the alternative, to Transfer Venue (Doc. 22). On January 28, 2022, Huguely filed a reply in support of her Motion to Dismiss, and/or in the alternative, to

---

[2] (Doc. 1 (¶¶ 60–72)).

[3] (Doc. 1 (¶¶ 73–77)).

[4] (Doc. 1 (¶¶ 78–84)).

[5] (Doc. 8 PAGEID 81; Doc. 12 PAGEID 142).

[6] *See* S.D. Ohio Civ. R. 65.1(b).

[7] (12/21/2021 Minute Entry).

[8] Huguely has twice represented to the Court that she intends to hire counsel, but to date no attorney has entered an appearance on her (or co-Defendant Queen's) behalf. (01/07/2022 & 01/12/2022 Minute Entries).

As a corporation, Defendant Queen is precluded from proceeding *pro se* and cannot be represented by an officer. *See Gerber v. Riordan*, 649 F.3d 514, 516 (6th Cir. 2011) (citing, *inter alia*, 28 U.S.C. § 1654); *Harris v. Akron Dep't of Public Health*, 10 F. App'x 316, 319 (6th Cir. 2001).

[9] The Clerk docketed Huguely's memorandum twice to capture both events in CM/ECF.

Transfer Venue (Doc. 25) and, in the same memorandum, a Motion to Strike Plaintiff QFS's Complaint for "UnPerfected" Service (Doc. 26).[10]

## II. LAW AND ANALYSIS

**Motion to Dismiss/Transfer.** Huguely does not challenge this Court's subject-matter jurisdiction.[11] And while she makes passing reference to a lack of personal jurisdiction,[12] Huguely focuses her argument on "improper and inconvenient" venue. She asks the Court either to dismiss the action (pursuant to Fed. R. Civ. P. 12(b)(3))[13] or

---

[10] As before, the Clerk docketed Defendant Huguely's memorandum twice to capture both events in CM/ECF. On the same date, Huguely also filed a "Counter-Claim" (Doc. 27) for "Discrimination, Breach of Contract and failure to provide the agreed upon services and administration of proper policy and procedure[.]"

[11] In any case, the Court is satisfied that it has subject-matter jurisdiction because there is complete diversity of citizenship between the parties and QFS alleges (Doc. 1 (¶ 7)) that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a), (c).

[12] While courts liberally construe *pro se* filings, "it is not within the purview of the district court to conjure up [arguments] never presented." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). *See also* note 13 *infra*.

[13] A party may assert the defense of "improper venue" by motion. Fed. R. Civ. P. 12(b)(3).

4

transfer it to the Northern District of Georgia (pursuant to 28 U.S.C. § 1404(a))[14]. Huguely does not seek transfer under 28 U.S.C. § 1406(a)[15] or 28 U.S.C. § 1631[16].

Huguely relies on the fact that she and co-Defendant Queen are Georgia residents and contends that "[a] more substantial part of the events or omissions giving rise to this claim occurred outside this district than within it." (Doc. 14 (¶¶ 4, 5)). She contends that "[a]ny potential witnesses called on by the Defendants would surely also reside in the state of Georgia." (*Id.* (¶ 16)). Huguely insists that it would be "cost-prohibitive" for her—a "small, minority, female" business owner—to carry the expenses of "travel and lodging" in order to litigate in Ohio. (*Id.* ¶ 15)).

Unfortunately for Huguely, all of these points sidestep her express agreement—both as Queen's owner and as an individual guarantor—to jurisdiction and venue in

---

[14] "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The purpose of this provision is to transfer actions brought in a permissible yet inconvenient forum." *Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 483 (6th Cir. 2009) (citing *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980)). Stated another way, a transfer of venue under § 1404(a) "may not be granted when the district court does not have personal jurisdiction over the defendants." *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) (citing *Martin*, 623 F.2d at 474). The fact that Huguely brings a motion under § 1404(a) reinforces the undersigned's determination that she does not challenge personal jurisdiction. *See Stehle v. Venture Logistics, LLC*, No. 3:19-cv-169, 2020 WL 127707, at *8 (S.D Ohio Jan. 10, 2020) ("Section 1404 does not permit transfer when a court lacks jurisdiction over the defendant.") (citing *Pittock*).

[15] "The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a); *see MLP Tech., Inc. v. LifeMed ID, Inc.*, No. 5:13-cv-00909, 2013 WL 6243943, at *5 (N.D. Ohio Dec. 3, 2013) ("A 'district court need not have personal jurisdiction over defendants before transferring pursuant to this section.'" (quoting *Jackson v. L & F Martin Landscape*, 421 F. App'x 482, (6th Cir. 2009) (citation omitted))).

[16] When a court "finds that there is a want of jurisdiction, [it] shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . ." 28 U.S.C. § 1631. Both § 1406(a) and § 1631 are "similar provision[s]" that "confer broad discretion [upon the district court] in ruling on a motion to transfer." *Jackson*, 421 Fed. App'x at 483-84 (quoting *Stanifer v. Brannan*, 564 F.3d 455, 456-57 (6th Cir. 2009)).

5

Hamilton County, Ohio (and, in turn, the Southern District of Ohio at Cincinnati). Paragraph 28(A) of the Agreement discusses "Governing Law" and "Venue" and reads as follows:

> Contractor and Guarantor(s) understand and acknowledge that Carrier is organized under Nevada law and has its headquarters, and conducts substantial business and operations, in Ohio where it is registered to do business. Contractor further acknowledges and agrees that its performance under this Agreement is due and owing to Carrier, and that a substantial portion of the duties and obligations of the Parties are to be performed in, Hamilton County, Ohio. Accordingly, this Agreement shall be governed by Ohio law, without reference to Ohio's principles of conflicts of laws. **The Parties voluntarily consent and agree to the exclusive jurisdiction of the state or federal courts located in Hamilton County, Ohio, over any action, suit, or proceeding arising out of or relating to this Agreement. The Parties further waive any objection to the venue of any such action, suit, or proceeding brought in any such court, and waive any claim that any such action, suit, or proceeding has been brought in an inconvenient forum.**

(Doc. 1-1 (¶ 28(A) (emphasis added)). Huguely summarily refers to this section as "flawed,"[17] but controlling case law supports its enforcement.

This Court previously has recognized that "[t]he use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court." *Stehle v. Venture Logistics, LLC*, No. 3:19-cv-169, 2020 WL 127707, at *3 (S.D Ohio Jan. 10, 2020) (quoting *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972))). "A forum selection clause contained in an agreement in connection with an arm's length commercial transaction between two business entities is valid and

---

[17] (Doc. 14 (¶ 10)).

6

enforceable." *Preferred Capital*, 453 F.3d at 721 (citing *Kennecorp Mortg. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 66 Ohio St. 3d 173, 174, 610 N.E.2d 987, 988 (Ohio 1993)). "The Supreme Court has stated that in light of present-day commercial realities, a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside." *Id.* (citing, *inter alia*, *M/S Bremen*, 407 U.S. at 15). A three-factor test applies: (1) the commercial nature of the contract; (2) the absence of fraud or overreaching; and (3) whether enforcement would otherwise be unreasonable or unjust. *Id.* (citations omitted); *G.C. Franchising Sys., Inc. v. Kelly*, No. 1:19-cv-49, 2021 WL 1209263, at *4 (S.D. Ohio Mar. 31, 2021). Of note, "[c]ommercial forum selection clauses between for-profit business entities are *prima facie* valid." *Preferred Capital*, 453 F.3d at 721.[18]

The commercial nature of the Agreement here is not in dispute. Further, Huguely makes no argument (and has produced no evidence) that the Agreement was the product of fraud or overreaching. Finally, her explanation as to why the forum selection clause ought not be enforced amounts to nothing more than "mere inconvenience," which falls short of the "unreasonable or unjust" standard. *Id.* at 722–23 ("A finding of unreasonableness or injustice must be based on more than mere inconvenience to the party seeking to avoid the requirements of the forum selection clause.") (citation omitted).

---

[18] Huguely cites *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988) for the proposition that "forum selection clauses, although a factor for the court to consider, should not be the controlling interest in determining whether or not a transfer should be granted." (Doc. 25 PAGEID 306). *Stewart*, however, is not on point factually and resolves a different legal issue. Petitioner there filed a civil action alleging, among other claims, breach of contract. Based on the forum selection clause contained in the parties' agreement, respondent moved to transfer the case under § 1404(a) or dismiss it for improper venue under § 1406. The Supreme Court held that a federal court sitting in diversity should apply federal (rather than state) law when deciding a motion to transfer a case to a venue provided in a commercial forum selection clause. Here, in contrast, QFS filed suit in the venue to which the parties agreed.

Huguely, as a business owner, should have realized the implications of agreeing to a forum selection clause and "[w]hile [she] may be dissatisfied with the litigation forum, it is not [this Court's] task to save [her] from the consequences of an agreement [she] freely entered into." *Id.* at 723–24; *see First Commc'ns, LLC v. Renteria*, No. 5:20-CV-02616, 2022 WL 19711, at *3 (N.D. Ohio Jan. 3, 2022) (enforcing forum selection clause even though "contracts, evidence, and witnesses" were located in a different state, because, citing *Preferred Capital*, these inconveniences were "foreseeable" at the time the contracts were signed).

The forum selection clause to which QFS and Huguely agreed will be enforced. The Court will deny Huguely's Rule 12(b)(3) motion to dismiss (Doc. 14) as well as her alternate § 1404(a) motion to transfer (Doc. 14) this civil action to the Northern District of Georgia.

**Motion to Strike.**  Huguely's reply in support of her Rule 12(b)(3) motion asks the Court to strike QFS's Verified Complaint "due to UnPerfected Service". (Doc. 26 PAGEID 315).[19]  Review of the docket to date indicates otherwise.

Following Huguely's statement (during the January 7, 2022 Local Rule 65.1 informal preliminary conference) that she had not been served, QFS attorney Charles E.

---

[19] Insufficient process and insufficient service of process are two affirmative defenses that may be asserted in a motion pursuant to Fed. R. Civ. P. 12(b)(4) and Fed. R. Civ. P. 12(b)(5), respectively.  Huguely references neither.

"Courts generally treat Rule 12(b)(4) and (5) as more or less interchangeable."  *Shelby v. PeopleReady*, No. 3:18-cv-00611, 2019 WL 2814668, at *1 (M.D. Tenn. June 4, 2019) (citation omitted), *report and recommendation adopted*, 2019 WL 2764070 (M.D. Tenn. July 2, 2019).  "Rule 12(b)(4) challenges the *form* of process, whereas Rule 12(b)(5) challenges the *method* of servicing process."  *Id.* (emphasis in original).

Rust filed a declaration on January 11, 2022 certifying that, on December 10, 2021, his office sent copies of the Verified Complaint and Motion for Temporary Restraining Order and Preliminary and Permanent Injunction—along with a Notice of Lawsuit and Request to Waive Service of a Summons—to Huguely (and co-Defendant Queen) via FedEx Priority Overnight. (Doc. 16 (¶¶ 1–4) & Docs. 16-1, 16-2). The proof-of-delivery receipts indicate that "R. Huguely" signed for both on December 14, 2021 at 2:38 p.m. (Doc. 16 (¶¶ 5–7) & Doc. 16-3).[20]

Huguely again denied being served (during the January 12, 2022 Local Rule 65.1 informal preliminary conference) and apparently failed to return the waiver form within 30 days as allowed under Fed. R. Civ. P. 4(d)(1)(F). Attorney Rust thereafter filed a Request for the Issuance of a Summons as to Huguely (and co-Defendant Queen) on January 19, 2022. (Docs. 18, 19). The Clerk issued both summonses the next day, January 20, 2022, and sent them by USPS certified mail to Huguely (and co-Defendant Queen) on January 21, 2022. (Docs. 20, 23). The USPS tracking receipt indicates that Huguely received her summons on January 28, 2022 at 6:16 p.m. (Doc. 28 PAGEID 318, 320).[21]

Because Defendant Huguely has been served in a timely fashion,[22] the Court will deny as moot her Motion to Strike (Doc. 26).

---

[20] Attorney Rust also attached an email exchange between himself and Huguely in which she states, "I am hiring an attorney to represent me in this case." (Doc. 16 (¶ 8) & Doc. 16-4).

[21] Co-Defendant Queen was served on January 25, 2022 at 10:58 a.m. (Doc. 28 PAGEID 318, 319).

[22] Fed. R. Civ. P. 4(m) requires that a defendant be served "within 90 days after the complaint is filed[.]" As noted, QFS's Verified Complaint was filed on December 10, 2021 and Huguely was served 50 days later on January 28, 2022.

### III. CONCLUSION

For the foregoing reasons, Defendant Robyn Huguely's Motion to Dismiss, and/or in the alternative, to Transfer Venue (Doc. 14) is **DENIED** in its entirety. Defendant Robyn Huguely's Motion to Strike (Doc. 26) is **DENIED as moot**.

**IT IS SO ORDERED.**

                                                        <u>/s/ *Michael R. Barrett*</u>
                                                        Michael R. Barrett, Judge
                                                        United States District Court