**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| QFS Transportation, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:21-cv-00769 |
| | ) | |
| vs. | ) | Judge Michael R. Barrett |
| | ) | |
| Robyn Huguely, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**TEMPORARY RESTRAINING ORDER**

This matter is before the Court on the Motion for Temporary Restraining Order and Preliminary and Permanent Injunction and Memorandum in Support (Doc. 8) filed by Plaintiff QFS Transportation, LLC, as supplemented (Doc. 12). As explained below, a temporary restraining order will be entered.

I.      **BACKGROUND**

**Allegations of the Verified Complaint.** Plaintiff QFS Transportation, LLC ("QFS") is a Nevada limited liability company and registered to do business in Ohio, with its principal place of business located here in Hamilton County, Ohio. (Doc. 1 (¶ 1)). Defendant Robyn Huguely ("Huguely") is a resident of Newnan, Georgia and is a principal and officer of co-Defendant Queen Logistics, LLC ("Queen"). (*Id.* (¶ 2)). Queen is a Georgia limited liability company with a principal place of business located in Jonesboro, Georgia. (*Id.* (¶ 3)). Defendant Mercury Transportation, Inc. d/b/a World Logistics USA, LLC ("Mercury") is a New Jersey corporation with its principal place of business located in Allentown, New Jersey. (*Id.* (¶ 4)).

1

QFS is a federally registered motor carrier that, among other things, provides third-party logistics services throughout the United States. (*Id.* (¶ 10)). QFS engages independent contractors as agents to perform services for existing QFS customers in a given local market, as well as to develop additional business there. (*Id.* (¶ 11)). On July 22, 2020, QFS and Queen entered into an Agreement for Regional Business Development ("Agreement") that included sections governing Exclusivity[1], Non-Competition[2], and Non-Solicitation[3]. (*Id.* (¶ 19)). Among its duties, Queen was to develop and solicit freight transportation exclusively for QFS in the southeastern region of the United States. (*Id.* (¶ 21)). Huguely personally and expressly guaranteed Queen's obligations to QFS under the Agreement. (*Id.* (¶ 20); Doc. 1-1 PAGEID 23 & (¶ 2(E))). QFS alleges that it terminated its relationship with Queen and Huguely on September 13, 2021 and, thereafter, Queen and Huguely entered into a relationship with Defendant Mercury—a direct competitor of QFS—to perform the same services as they performed for QFS. (Doc. 1 (¶¶ 31–33)). On November 19, 2021, QFS sent a cease-and-desist letter to both Huguely and Queen. (Doc. 1-2). QFS sent a letter to Mercury the same date. (Doc. 1-3). By return correspondence and through counsel, Mercury denied any wrongdoing. (Doc. 1-4).

On December 10, 2021, QFS filed a Verified Complaint for Temporary Restraining Order, Injunctive Relief, and Damages against Huguely/Queen for breach of contract[4];

---

[1] (Doc. 1-1 (¶ 7)).

[2] (Doc. 1-1 (¶ 8)).

[3] (Doc. 1-1 (¶ 9)). A section governing Confidentiality also is included. (*See id.* (¶ 10)).

[4] (Doc. 1 Count I (¶¶ 46–53), Count II (¶¶ 54–59)).

against Huguely/Queen and Mercury for violations of Ohio's Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code § 1333.61–.69[5]; against Mercury for tortious interference with a contract (the Agreement between Huguely/Queen and QFS)[6]; and against Huguely/Queen and Mercury for tortious interference with business relationships (between QFS and its (current and prospective) agents, owner-operators, drivers, and customers)[7].[8]  As required under the local rules,[9] QFS filed a separate Motion for Temporary Restraining Order and Preliminary and Permanent Injunction.  (Doc. 8).

**Local Rule 65.1 Telephone Conferences and Subsequent Filings.**[10]  Thus far the Court has conducted five informal preliminary telephone conferences related to this matter.  Huguely and Queen did not appear for the December 17, 2021 or December 21, 2021 conferences. (12/17/21 & 12/21/2021 Minute Entries).  During the December 21 conference, QFS sought leave to file a supplement to its Motion for Temporary Restraining Order and Preliminary and Permanent Injunction, which the Court granted.  (12/21/2021 Minute Entry).[11]  Huguely and Queen did not appear for the next conference on January 3, 2022.  (01/03/2022 Minute Entry).   On January 6, 2022, however,

---

[5] (Doc. 1 Count III (¶¶ 60–72)).

[6] (Doc. 1 Count IV (¶¶ 73–77)).

[7] (Doc. 1 Count V (¶¶ 78–84)).

[8] (Doc. 8 PAGEID 81; Doc. 12 PAGEID 142).

[9] *See* S.D. Ohio Civ. R. 65.1(b).

[10] "In most cases, the Court will not hear or rule on any motion for a temporary restraining order or a preliminary injunction until after the Court holds an informal preliminary conference with all parties to determine what additional proceedings are necessary."  S.D. Ohio Civ. R. 65.1(a).

[11] QFS's Supplemental Motion for Temporary Restraining Order and Preliminary and Permanent Injunction (Doc. 12) was filed on December 29, 2021.

Defendant Huguely, proceeding *pro se*, filed a single memorandum in opposition to QFS's Motion for Temporary Restraining Order (Doc. 13) and in support of a Motion to Dismiss, and/or in the alternative, to Transfer Venue (Doc. 14).[12] Huguely thereafter appeared for the January 7, 2022 and January 12, 2022 conferences. (01/07/2022 & 01/12/2022 Minutes Entries).[13] On January 20, 2022, QFS filed a combined reply in support of its Motion for Temporary Restraining Order (Doc. 21) and memorandum in opposition to Huguely's Motion to Dismiss, and/or in the alternative, to Transfer Venue (Doc. 22). On January 28, 2022, Huguely filed a reply in support of her Motion to Dismiss, and/or in the alternative, to Transfer Venue (Doc. 25) coupled with a Motion to Strike Plaintiff QFS's Complaint for "UnPerfected" Service (Doc. 26).[14] The Court denied Huguely's Motion to Dismiss, and/or in the alternative, to Transfer Venue on February 8, 2022. (Doc. 29). In the same Opinion and Order (Doc. 29), the Court denied as moot Huguely's Motion to Strike, finding that Huguely ultimately was served in a timely fashion.

QFS's supplement to its Motion for Temporary Restraining Order and Preliminary and Permanent Injunction is based on the December 27, 2021 affidavit of its executive

---

[12] The Clerk docketed Huguely's memorandum twice to capture both events in CM/ECF.

[13] During each of these conferences, Huguely represented to the Court that she intends to hire counsel, but to date no attorney has entered an appearance on her (or co-Defendant Queen's) behalf.

Of course, as a corporation, Queen is precluded from proceeding *pro se* and cannot be represented by an officer. *See Gerber v. Riordan*, 649 F.3d 514, 516 (6th Cir. 2011) (citing, *inter alia*, 28 U.S.C. § 1654); *Harris v. Akron Dep't of Public Health*, 10 F. App'x 316, 319 (6th Cir. 2001).

[14] As before, the Clerk docketed Defendant Huguely's memorandum twice to capture both events in CM/ECF.

On the same date, Huguely also filed a "Counter-Claim" (Doc. 27) for "Discrimination, Breach of Contract and failure to provide the agreed upon services and administration of proper policy and procedure[.]" She seeks damages in the amount of "$500,00." (*Id.*). It is unclear to the Court whether she meant to allege $50,000 or $500,000.

vice president Todd Hammerstrom. (Doc. 12-1). Hammerstrom testifies that he has received "confirmation" from the Georgia Ports Authority that Huguely "now has authority to pull containers" on behalf of Mercury. (*Id*. (¶ 3)). Further, while acting as QFS's agent, Huguely retained Samuel Bailey as a truck driver. (*Id*. (¶ 4)). QFS terminated Bailey on August 2, 2021, such that Bailey had no further authority "to perform services on behalf of QFS" whether through Huguely or otherwise. (*Id*.). On December 15, 2021, however, Bailey "pulled a container under QFS's SCAC code"[15] and attempted to deliver it to a freight storage yard (belonging to XPO Logistics) in Atlanta, Georgia. (*Id*. (¶ 5) & PAGEID 162). The vehicle driven by Bailey featured a QFS placard. (*Id*. (¶ 6) & PAGEID 163). A search on the "booking code" for the container Bailey attempted to deliver linked the freight to Huguely and Mercury. (*Id*. (¶ 8)). Hammerstrom testifies that Bailey's actions "expose QFS to per diem charges" arising from his failure to return the rented container in a timely manner. (*Id*. (¶ 9)). Hammerstrom further testifies that there have been additional instances of Bailey moving containers in a similar fashion that "exposes QFS to violations of [Department of Transportation] regulations which could result in various penalties, financial and otherwise." (*Id*. (¶ 10)). Finally, to the extent any vehicles bearing QFS identification are involved in accidents, Hammerstrom states that QFS's exposure to liability and damages "is catastrophic and potentially crippling." (*Id*. ¶ 11)).[16]

---

[15] Hammerstrom explains that a "SCAC" code "is a Standard Carrier Alpha Code that is used to identify transportation companies and keep track of intermodal containers." QFS's SCAC code is "QFSR". (Doc. 12-1 (¶ 5 & n.1)).

[16] In her memorandum in opposition to QFS's Motion for Temporary Restraining Order, Huguely contends that Bailey "was terminated prior to any alleged inappropriate activity" and attaches a document labeled "Pay Report". (Doc. 14 PAGEID 197 (¶ 7) & 204). However, Huguely has failed to submit an affidavit or declaration in support of this contention or that authenticates (and explains) the attached document.

## II.    ANALYSIS

**Jurisdiction and Venue.**   The Court is satisfied that it has subject-matter jurisdiction over this action because there is complete diversity of citizenship between the parties and QFS alleges that the amount in controversy[17] exceeds $75,000.   *See* 28 U.S.C. § 1332(a), (c).  And, as discussed in detail in this Court's Opinion and Order dated February 8, 2022 (Doc. 29), per the terms of the Agreement, Huguely and Queen consented to personal jurisdiction in the Southern District of Ohio and waived any venue objections.  (Doc. 1 (¶ 8) & Doc. 1-1 (¶ 28(A))[18]).

Attorney Brendan Collins (of the Washington, D.C. firm GKG Law, P.C.) waived service of a summons and complaint on behalf of Defendant Mercury.  (Doc. 24); *see* Fed. R. Civ. P. 4(d).  QFS and Mercury (through local counsel) have since stipulated that

---

[17] (Doc. 1 (¶ 7)).

[18] Paragraph 28(A) of the Agreement is titled, "Governing Law, Venue, and Severability" and reads as follows:

> Contractor and Guarantor(s) understand and acknowledge that Carrier is organized under Nevada law and has its headquarters, and conducts substantial business and operations, in Ohio where it is registered to do business.  Contractor further acknowledges and agrees that its performance under this Agreement is due and owing to Carrier, and that a substantial portion of the duties and obligations of the Parties are to be performed in, Hamilton County, Ohio.  Accordingly, this Agreement shall be governed by Ohio law, without reference to Ohio's principles of conflicts of laws.  **The Parties voluntarily consent and agree to the exclusive jurisdiction of the** state or **federal court**s **located in Hamilton County, Ohio, over any action, suit, or proceeding arising out of or relating to this Agreement.  The Parties further waive any objection to the venue of any such action, suit, or proceeding brought in any such court, and waive any claim that any such action, suit, or proceeding has been brought in an inconvenient forum.**

> (Doc. 1-1 PAGEID 37 (emphasis added)).

6

Mercury's answer (or Rule 12(b)(2) motion[19]) will not be due until February 22, 2022. (Doc. 29); *see* S.D. Ohio Civ. R. 6.1(a).

**Standard of Law.** The standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *See Doe v. Univ. of Cincinnati,* No. 1:15-cv-600, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015) (citing *Reid v. Hood,* No. 1:10 CV2842, 2011 WL 251437, at * 2 (N.D. Ohio Jan. 26, 2011)). In determining whether to grant or deny a temporary restraining order or a preliminary injunction, a court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (internal quotation marks and citation omitted). These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997).[20] "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citation omitted).

The purpose of a temporary restraining order is to preserve the status quo so that a reasoned resolution of a dispute may be had. *See, e.g.*, *Procter & Gamble Co. v.*

---

[19] A party may assert the defense of "lack of personal jurisdiction" by motion. Fed. R. Civ. P. 12(b)(2). QFS and Mercury have stipulated that Mercury reserves the right to contest QFS's claim that this Court has personal jurisdiction over Mercury. (Doc. 29 PAGEID 321).

[20] A court need not make specific findings on each factor if fewer factors dispose of the issue. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399–400 (6th Cir. 1997).

*Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996) (citing Fed. R. Civ. P. 65). Accordingly, in addition to reviewing the movant's likelihood of success on the merits, a court also should focus on the threat of irreparable injury. *Id.* at 226; *Reid*, 2011 WL 251437, at *2 (citing *Motor Vehicle Bd. of Calif. v. Fox,* 434 U.S. 1345, 1347 n.2 (1977)).

**Success on the Merits.** As examined below, this factor weighs in favor of a temporary restraining order.[21]

**Breaches of contract.** QFS alleges that, per the terms of the Agreement, Huguely/Queen cannot, directly or indirectly: (1) compete with QFS[22] or solicit or hire QFS's owner-operators or other agents (among others)[23] for one year after termination; (2) divert business away from QFS for three years after termination[24]; and (3) use or disclose QFS's confidential and proprietary information and trade secrets (in perpetuity)[25]. QFS further alleges that that Huguely/Queen have breached the Agreement by: (1) allowing Huguely, an officer/director of Queen, to work for competitor Mercury[26] and to solicit at least two QFS agents to work for competitor Mercury[27]; and (2) using QFS's "Confidential Information" and trade secrets to benefit themselves and Mercury[28].

---

[21] QFS brings five substantive claims in total. The Sixth Circuit has held that if a plaintiff can show a likelihood of success on the merits of **any** of the claims, an injunction may issue, subject to consideration of the other factors." *See Hoover Transp. Servs., Inc. v. Frye*, 77 F. App'x 776, 781 (6th Cir. 2003) (per curiam) (emphasis added). Regardless, the Court will consider the merits of all five.

[22] (Doc. 1-1 (¶ 8)).

[23] (Doc. 1-1 (¶ 9(C))).

[24] (Doc. 1-1 (¶ 9(B))).

[25] (Doc. 1-1 (¶ 10(E))).

[26] (Doc. 1 (¶ 49)).

[27] (Doc. 1 (¶¶ 49–50)). The two agents identified are Altoria Walker and A & T Integrity Logistics LLC along with Denesia Jackson and Jacksongirl Trucking LLC. (*See id.* (¶ 49)).

[28] (Doc. 1 (¶¶ 62–67)).

Hammerstrom's affidavit identifies an additional instance of solicitation (former driver Samuel Bailey)[29] in favor of competitor Mercury and a breach by Huguely/Queen of "Contractor Services"[30] as defined in the Agreement.

"A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 325 N.E.2d 544, at syl. ¶ 2 (Ohio 1975). "A covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests." *Id.*, 325 N.E.2d 544, at syl. ¶ 1. Guided by these parameters, the Ohio Supreme Court later modified a non-competition agreement from two years to one and a non-solicitation agreement from a lifetime to just one year. *Rogers v. Runfola & Assocs., Inc.*, 57 Ohio St. 3d 5, 565 N.E.2d 540 (Ohio 1991).[31]

QFS acknowledges that its relationship with Huguely/Queen is one of principal/agent rather than employer/employee. (Doc. 12 PAGEID 144; *see* Doc. 1-1 (¶ 2)). Nevertheless, it urges the Court to apply this rationale because it has the same

---

[29] The Agreement prohibits solicitation of current agents or those who "**were at any time during the Term, leased to or working for Carrier**, other than those owner-operators who are leased by and under Contractor's exclusive dispatch and control." (Doc. 1-1 (¶ 9(C)) (emphasis added)).

[30] Paragraph 4(E) of the Agreement provides:

**All vehicles utilized in any way by Contractor will be placarded with Carrier's logo. Contractor's trucks will remain placarded with Carrier's logo until this Agreement terminates, at which time Contractor affirms it will immediately remove placards** upon notification by Carrier and provide reasonable written evidence and/or confirmation that this has occurred in a timely manner.

(Doc. 1-1 PAGEID 26 (emphasis added)).

[31] Ohio law governs the Agreement "without reference to Ohio's principles of conflicts of laws." (Doc. 1-1 (¶ 28(A))).

"legitimate interest [as does an employer] in limiting not only a former employee's ability to take advantage of personal relationships the employee has developed while representing the employer to the employer's established client, but also in preventing a former employee from using his former employer's customer lists or contacts to solicit new customers." *UZ Engineered Prods. Co. v. Midwest Motor Supply Co., Inc.*, 147 Ohio App. 3d 382, 770 N.E.2d 1068, at ¶ 39 (Ohio App. 10th Dist. 2001) (citing *Runfola*). In addition, like an employer, QFS "has a legitimate interest in preventing a former employee from using the skill, experience, training, and confidential information the former employee has acquired during the employee's tenure with his employer in a manner advantageous to a competitor in attracting business, regardless of whether it was an already established customer of the former employer." *Id.*

Based on analogous Ohio employment law, the Court finds that the Agreement is valid considering the time limitations within and that QFS's allegations (as set forth in the Verified Complaint and the supplemental testimony of Todd Hammerstrom) state a breach thereof. Accordingly, the Court determines that QFS has a strong likelihood of success on the merits of its breach of contract claims against Huguely/Queen.

**OUTSA violations.** To prevail on a misappropriation of trade secrets claim under OUTSA, a plaintiff must show: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret. *Handel's Enterprises, Inc. v. Schulenburg*, 765 F. App'x 117, 122 (6th Cir. 2019) (citing *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x

10

860, 861 (6th Cir. 2008)).  "Actual or threatened misappropriation may be enjoined."  Ohio

Rev. Code § 1333.62(A) (emphasis added).[32]

"The question of whether something is a trade secret is a question of fact to be

determined by the trier of fact upon the greater weight of the evidence." *Hoover Transp.*

*Servs., Inc. v. Frye*, 77 F. App'x 776, 782 (6th Cir. 2003) (per curiam) (citing *Valco*

*Cincinnati, Inc. v. N & D Machining Serv., Inc.*, 24 Ohio St. 3d 41, 492 N.E.2d 814 (1986)).

Ohio defines a trade secret as "information" that both:

> (1) derives independent economic value, actual or potential, from
> not being generally known to, and not being readily ascertainable
> by proper means by, other persons who can obtain economic
> value from its disclosure or use.
>
> (2) is the subject of efforts that are reasonable under the
> circumstances to maintain its secrecy.

*Handel's Enterprises,* 765 F. App'x at 122 (citing Ohio Rev. Code § 1333.61(D)).

Additionally, courts should consider the following factors in determining whether an item

constitutes a trade secret:

> (1) The extent to which the information is known outside the
> business; (2) the extent to which it is known to those inside the
> business, *i.e.*, by the employees; (3) the precautions taken by the
> holder of the trade secret to guard the secrecy of the information;
> (4) the savings effected and the value to the holder in having the
> information as against competitors; (5) the amount of effort or
> money expended in obtaining and developing the information; and
> (6) the amount of time and expense it would take for others to
> acquire and duplicate the information.

*Id.* (citing *Heartland Home Fin.,* 258 F. App'x at 861–62); *State ex rel. Plain Dealer v. Ohio*

*Dept. of Ins.*, 80 Ohio St. 3d 513, 687 N.E.2d 661, 672 (1997).  While no single factor is

---

[32] In the employment context, OUTSA expressly provides that, "[n]o employee of another, who in the course and within the scope of his employment receives any confidential matter or information, shall knowingly, without the consent of his employer, furnish or disclose such matter to any person not privileged to acquire it."  Ohio Rev. Code § 1333.81.

dispositive, a business must take "active steps" to maintain secrecy "in order to enjoy **presumptive** trade secret status." *Columbus Bookkeeping & Bus. Servs., Inc. v. Ohio State Bookkeeping, L.L.C.*, No 11AP-227, 2011-Ohio-6877, at ¶ 19, 2011 WL 6938340, at *4 (Ohio App. 10th Dist. Dec. 30, 2011) (cleaned up) (emphasis added).

QFS alleges that it grants its agents access to certain types of confidential and proprietary information, to include: "its software; financial and operating policies and procedures; current and prospective customer data and profiles; credit information about current and prospective customers, contractors, and suppliers; business and development strategies; pricing lists; owner-operator lists; customer lists and contact information; and purchasing information[.]" (Doc. 1 (¶ 15)). QFS further alleges that it takes "overt and deliberate steps" to protect this information "by limiting the number of individuals who are permitted to access it and requiring those who do have access to it to agree to contracts containing terms of confidentiality." (Doc. 12 PAGEID 148 (citing Doc. 1 (¶ 18)).

This Court has previously held that "confidential information concerning sales, service and pricing strategies" may constitute trade secrets under Ohio law "if they derive independent economic value from not being generally known and ascertainable by proper means, and are the subject of efforts reasonable under the circumstances to maintain their secrecy." *AK Steel Corp. v. Miskovich*, No. 1:14cv174, 2014 WL 11881030, at *6 (S.D. Ohio Mar. 3, 2014) (collecting cases).

In addition, "[c]lient lists may be trade secrets." *Columbus Bookkeeping*, 2011-Ohio-6877, at ¶ 21, 2011 WL 6938340, at *4 (citing *Al Minor & Assoc., Inc. v. Martin*, 117 Ohio St. 3d 58, 881 N.E.2d 850, at ¶¶ 24, 27 (Ohio 2008)). But, again, trade secret status

is warranted only when the information contained within the client list "is not generally known or readily ascertainable to the public." *Id.* (quoting *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Envtl. Prot. Agency*, 88 Ohio St. 3d 166, 173, 724 N.E.2d 411, 418 (Ohio 2000)). Thus, a client list entitled to trade secret status "typically includes not only the name of the business but information not available to the public, such as the name of a contact person, a non-public telephone or cell phone number, an email address, and other pertinent business data known only because of the client relationship." *Id.* (citing *Al Minor*). All this information, together, *is* the value in a client list. *Id.* A business generally "has spent many hours of labor and interaction to develop the information reflected in the list, and disclosure to a competitor grants the competitor a tremendous advantage in not having to spend the time and money to develop that same information." *Id.*

Defendants Huguely and Queen agreed in writing not to disclose or use QFS's confidential and proprietary information to the detriment of QFS. (*See* Doc. 1-1 (¶¶ 10(A–E))). Defendants Huguely and Queen also agreed in writing that entry into an agency or business relationship with a QFS competitor while under restriction results in a *presumption* that Huguely/Queen have disclosed and used QFS's confidential information to unfairly compete against QFS. (*See id.* (¶ 11(D))). QFS alleges that Huguely/Queen are now agents of its direct competitor Mercury and, on Mercury's behalf, is attempting to divert QFS's agents and current (and prospective) customers to Mercury. (Doc. 1 (¶¶ 31–33, 64); Doc. 12-1). Neither Huguely nor any other principal of Queen disavowed an intent to violate the confidentiality terms set forth in the Agreement upon receipt of QFS's cease-and-desist letters. Neither did Mercury. Hence, the Court determines that

QFS has a strong likelihood of success on the merits of its OUTSA claims against Huguely/Queen and Mercury.

**Tortious interference.** QFS alleges that Mercury has interfered with the Agreement between it and Huguely/Queen. QFS also alleges that Huguely/Queen interfered with its business relationships with current (and prospective) agents, owner-operators, drivers, and customers, to include two current agents and one former driver.

Ohio recognizes the tort of interference with a contract. *Kenty v. Transam. Premium Ins. Co.*, 72 Ohio St. 3d 415, 650 N.E.2d 863, at syl. ¶ 1 (Ohio 1995). Its elements are: (1) existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification; and (5) resulting damages. *Id.*, 650 N.E.2d 863, at syl. ¶ 2. QFS has alleged that it put Mercury on notice of the Agreement between it and Huguely/Queen, to the extent it was unaware of this agency relationship, prior to filing suit.[33] QFS has further alleged that Mercury—by entering into and maintaining an agency relationship with Huguely/Queen—intentionally procured breach of the Agreement and has provided no justification for its actions.[34]

A lack of privilege or justification is a "crucial" element of this tort. *Inwood Vill., Ltd. v. Christ Hosp.*, No. C-110730, 2012 WL 3104407, at *4, 2012-Ohio-3434, at ¶ 19 (Ohio App. 1st Dist. Aug. 1, 2012). Interference is justified only "if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract[.]" *Id.* (quoting Restatement (Second) of Torts § 773 (1979)). Mercury's reply to QFS's

---

[33] (Doc. 1 (¶¶ 74, 75) & Doc. 1-3).

[34] (Doc. 1 (¶ 76) & Docs. 1-4, 1-5).

cease-and-desist letter, attached to QFS's Verified Complaint, asserts no such interest. (*See* Doc. 1-4). "Fair competition" may serve to justify interference, but only when the contract in question is terminable "at will." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 179–80, 707 N.E.2d 853, 860–61 (Ohio 1999). The Agreement between QFS and Huguely/Queen is not terminable at will[35] and, as noted, the section prohibiting competition survives for one year after the relationship ends (for any reason)[36]. With this anticipated claim of justification by Mercury defeated, the Court determines that QFS has a strong likelihood of success on the merits of its tortious interference with a contract claim against Mercury.

Ohio also recognizes the tort of interference with a business relationship, which "requires that a defendant interfere with the relationship of the plaintiff and a third party." *Mehlman v. Cincinnati Children's Hosp. Med. Ctr.*, No. 1:20-cv-813, 2021 WL 4430631, at *11 (S.D. Ohio Apr. 26, 2021) (quoting *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 757 (S.D. Ohio 2013)).[37] Its elements are: (1) existence of a business relationship; (2) the wrongdoer's knowledge of the relationship; (3) an intentional interference causing a breach or termination of the relationship; and (4) resulting damages. *Id.* (quoting *Kuvedina*, 946 F. Supp. 2d at 756)). But if a defendant and the third party are in a business relationship with one another, "they are considered to have

---

[35] (*See* Doc. 1-1 (¶ 13)).

[36] (*See* Doc. 1-1 (¶ 8)).

[37] "Tortious interference with contract and tortious interference with business relations differ primarily in that tortious interference with business relations includes intentional interference with a **prospective** contractual relationship not yet reduced to contract." *Zarwasch-Weiss v. SKF Economos USA, Inc.*, Nos. 1:10-cv-01327, 1:10-cv-01548, 2012 WL 194515, at *12 (N.D. Ohio Jan. 12, 2012) (citing *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.*, 148 Ohio App. 3d 596, 604, 774 N.E.2d 775, at ¶ 23 (Ohio App. 3d Dist. 2002)) (emphasis added).

a qualified privilege to affect one another's affairs." *Zarwasch-Weiss v. SKF Economos USA, Inc.*, Nos. 1:10-cv-01327, 1:10-cv-01548, 2012 WL 194515, at *12 (N.D. Ohio Jan. 12, 2012) (citing *Chandler & Assoc., Inc. v. America's Healthcare Alliance, Inc.*, 125 Ohio App. 3d 572, 583, 709 N.E.2d 190, 197 (Ohio App. 8th Dist. 1997)). This privilege is defeated upon a showing of "actual malice," which, in this context, means "unjustified or improper interference." (*Id.*).

QFS alleges that Mercury and Huguely/Queen have "knowingly solicited a relationship with at least two of [its] agents, Denesia Jackson [and Jacksongirl Trucking LLC] and Altoria Walker [and A & T Integrity Logistics LLC]." (Doc. 1 (¶¶ 82, 83); *see id.* (¶¶ 49, 50)). Hammerstrom further alleges that Huguely/Queen has permitted former QFS agent Samuel Bailey to haul loads for Mercury as if under QFS authority. (Doc. 12-1). At this early juncture, there is no evidence before the Court that Huguely/Queen or Mercury previously had a business relationship with Jackson and Walker or Bailey such that their interference was otherwise justified. Thus, the Court determines that QFS has a strong likelihood of success on the merits of its tortious interference with business relations against both Mercury and Huguely/Queen.

**Irreparable Injury.** This factor also weighs in favor of a temporary restraining order.

"To demonstrate irreparable harm, the plaintiffs must show that . . . they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).

As discussed, QFS alleges that Huguely/Queen already have begun to contact QFS's agents—using QFS's confidential and proprietary information—to influence them to end their relationship with QFS and begin one with competitor Mercury.  These contacts are obviously intended to divert business from QFS for the benefit of Mercury and present the risk that Huguely/Queen will continue to use and disclose QFS's confidential and proprietary information to unfairly compete with QFS.  QFS argues that the harm that will result is irreparable because "once a trade secret is revealed, it cannot be undone."  (Doc. 12 PAGEID 153).  Moreover, the exposure to QFS for liability for injury and damages that could result from a road accident involving a vehicle being "deceptively" operated as if under QFS authority is "catastrophic and potentially crippling."  (*Id.* & Doc. 12-1 (¶ 11)).

Reference to Ohio employment law is again instructive.  "[C]ourts have found that injunctive relief is warranted by establishing that an employee gained intimate knowledge of an employer's trade secrets and confidential information, and has begun working for a competitor in a substantially similar capacity."  *Prosonic Corp. v. Stafford*, 539 F. Supp. 2d 999, 1007 (S.D. Ohio 2008) (applying Ohio law).  "[T]he loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer[ ]" as well.  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992); *Dayton Superior Corp. v. Yan*, No. 3:12-cv-380, 2012 WL 5497804, at *8 (S.D. Ohio Nov. 13, 2012) ("courts have found that a mere violation of a covenant not-to-compete is an irreparable injury") (citation omitted).  And, as to Mercury, irreparable injury "generally results from a competitor's misappropriation of confidential customer information." *Koorsen Fire & Security, Inc. v. Westerfield*, No. 1:17-cv-845, 2018 WL 3549850, at *9 (S.D. Ohio May 22, 2018) (quoting *Dayton Superior Corp.*, 2012 WL 5497804, at *8).  The

Court is satisfied that the harm alleged by QFS is actual and imminent, such that the restraining order requested is necessary to protect QFS from suffering the further use or disclosure of its confidential and proprietary information.

**Harm to Others/Public Interest.** These final two factors likewise weigh in favor of a temporary restraining order.

The balance of harms favors QFS over Huguely/Queen and Mercury. *See generally Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982). Huguely/Queen will be temporarily restrained from using and disclosing QFS's confidential and proprietary information, as well as acting as agent to competitor Mercury. To the extent they suffer any harm, that harm is undermined by the fact that they signed the Agreement willingly and with knowledge of its restrictions. *Koorsen*, 2018 WL 3549850, at *9. And, because Mercury has no plausible right to QFS's trade secrets, Mercury cannot claim injury. *See id.*, at *10. Finally, while not downplaying the importance of freight transportation logistics, no significant public interest surrounds this case. *Id.* To the extent the public has any interest, it is to ensure that reasonable contracts are enforced. *Id.* (citing *Prosonic*, 539 F. Supp. 2d at 1008 ("upholding reasonable contracts is generally in the public interest"); *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 152 Ohio App. 3d 86, 786 N.E.2d 914, at ¶ 39 (Ohio App. 7th Dist. 2003) (preserving sanctity of contractual relations and preventing unfair competition, by enforcing restrictive covenants against former employees, traditionally recognized as being in the public interest).

**Bond.**  Fed. R. Civ. P. 65(c) requires the posting of a bond when a temporary restraining order is issued.[38]  QFS requests that the Court, in an exercise of discretion, dispense with this requirement.  (Doc. 12 PAGEID 155–56 (citing, *inter alia*, *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, No. 1:16-cv-1096, 2016 WL 6893847, at *6 (S.D. Ohio Nov. 23, 2016) (citing *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 100 (6th Cir. 1982)))).  QFS explains that "[w]hen there is no evidence that an injunction will harm the defendant[s], courts typically exercise their discretion to deny a bond."  (Doc. 12 PAGEID 156 (citing *Koorsen*, 2018 WL 3549850, at *11 (citations omitted))).

The relief requested here will restrain Huguely and Queen from doing what they contractually agreed not to do and Mercury from what the common law prohibits.  Thus, the Court sees no obvious harm to any of the Defendants at this early stage of the proceedings.  In addition, QFS alleges that Huguely and Queen owe QFS $243,391.99 (plus interest), an amount QFS states would (more than) offset any damages that Huguely and Queen might incur if the Court later concludes it entered this restraining order in error. (Doc. 12 PAGEID 156 (citing Doc. 1 (¶ 56)); *see* Fed. R. Civ. P. 65(c)).

In its discretion, the Court finds that QFS need not post a bond.

## III.  CONCLUSION

For the foregoing reasons, QFS's Motion (Doc. 8), as supplemented (Doc. 12), is **GRANTED IN PART**, to the extent it seeks a temporary restraining order; the portion of QFS's Motion (Doc. 8), as supplemented (Doc. 12), seeking a preliminary and permanent injunction, however, is **HELD IN ABEYANCE**.

---

[38] "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

Accordingly, **IT IS ORDERED** that Defendants Robyn Huguely and Queen Logistics, LLC are temporarily restrained from: (1) providing services, directly or indirectly, to any person or entity that is engaged in intermodal shipping, third-party logistics, freight brokerage, truck brokerage, supply-chain management, or related services that competes with QFS in the southeastern United States, specifically Defendant Mercury Transportation, Inc. d/b/a World Logistics USA; (2) directly or indirectly soliciting QFS's agents, employees, customers, and prospective customers, on behalf of themselves or any other individual or entity; (3) directly or indirectly interfering in QFS's business relationships with its agents, owner-operators, and drivers; (4) disclosing or using in any manner, whether directly or indirectly, QFS's confidential and proprietary information and trade secrets; and (5) permitting vehicles associated or affiliated with them to operate with QFS identification (such as license plates or placards).

**IT IS FURTHER ORDERED** that Defendant Mercury Transportation, Inc. d/b/a World Logistics USA is temporarily restrained from: (1) directly or indirectly assisting Defendants Robyn Huguely and Queen Logistics, LLC in directly or indirectly soliciting QFS's agents, owner-operators, and drivers; and (2) directly or indirectly interfering in QFS's business relationships with its agents, owner-operators, and drivers.

This Temporary Restraining Order is effective upon entry and expires 14 days thereafter unless dissolved earlier or extended by the Court.[39] Any bond requirement is waived.

Counsel for QFS shall serve Defendants Robyn Huguely and Queen Logistics,

---

[39] "The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(2). The time of entry is captured in the Notice of Electronic Filing receipt.

LLC with a copy of this Temporary Restraining Order.  *See* Fed. R. Civ. P. 65(d)(2).

A separate notice will issue setting a telephone conference to discuss the pending Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court
