**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

QFS Transportation, LLC,        )
                            )
        Plaintiff,         )   Case No.: 1:21-cv-00769
                            )
        vs.             )   Judge Michael R. Barrett
                            )
Robyn Huguely, *et al.*,       )
                            )
        Defendants.     )
                            )
                            )

**OPINION AND ORDER**

This matter is before the Court on Defendant Mercury Transportation, Inc.'s Motion to Dismiss (Doc. 32) the Complaint, filed pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiff has filed a memorandum in opposition (Doc. 37), to which Defendant Mercury has replied (Doc. 42). For the reasons that follow, the Motion will be GRANTED.

**I.    BACKGROUND**

**Verified Complaint Allegations.** Plaintiff QFS Transportation, LLC ("QFS") is a Nevada limited liability company and registered to do business in Ohio, with its principal place of business located here in Hamilton County, Ohio. (Verified Complaint, Doc. 1 (¶ 1)). Defendant Robyn Huguely ("Huguely") is a resident of Newnan, Georgia and is a principal and officer of co-Defendant Queen Logistics, LLC ("Queen"). (*Id.* (¶ 2)). Queen is a Georgia limited liability company with a principal place of business located in Jonesboro, Georgia. (*Id.* (¶ 3)). Defendant Mercury Transportation, Inc. d/b/a World

Logistics USA, LLC ("Mercury") is a New Jersey corporation with its principal place of business located in Allentown, New Jersey. (*Id.* (¶ 4)).[1]

QFS is a federally registered motor carrier that, among other things, provides third-party logistics services throughout the United States. (*Id.* (¶ 10)). QFS engages independent contractors as agents to perform services for existing QFS customers in a given local market, as well as to develop additional business there. (*Id.* (¶11)). On July 22, 2020, QFS and Queen entered into an Agreement for Regional Business Development ("Agreement") that included sections governing "Exclusivity", "Non-Competition", and "Non-Solicitation". (*Id.* (¶ 19)). Among its duties, Queen was to develop and solicit freight transportation exclusively for QFS in the southeastern region of the United States. (*Id.* (¶ 21)). Huguely personally and expressly guaranteed all of Queen's obligations to QFS under the Agreement. (*Id.* (¶ 20); Doc. 1-1 PAGEID 23 & (¶ 2(E)). QFS alleges that it terminated its relationship with Queen on September 13, 2021 and, thereafter, Queen entered into a relationship with Defendant Mercury—a direct competitor of QFS—to perform the same services as it performed for QFS. (Verified Complaint, Doc. 1 (¶¶ 31–33)). On November 19, 2021, counsel for QFS sent a cease-and-desist letter to both Huguely and Queen. (Doc. 1-2). Counsel for QFS sent a letter to Mercury the same date. (Doc. 1-3). That letter provides in pertinent part:

> . . . .
>
> To the extent Mercury/World is not already aware, AAVC and Queen each entered into separate agreements with QFS known as an Agreement for Regional Business Development ("the Agreement"). Those Agreements were personally guaranteed by Ms. Murphy and Ms. Huguely, respectively, and include continuing

---

[1] QFS invokes subject-matter jurisdiction based on diversity of citizenship and an amount in controversy greater than $75,000. (Verified Complaint, Doc. 1 (¶¶ 6, 7)). *See* 28 U.S.C. § 1332.

prohibitions that survive and remain in effect after the termination of any agency relationship with QFS. The prohibitions include non-compete, non-solicitation, and confidentiality restrictions, each which remain in place for a defined period of time after the date of termination. In AAVC's case, the agency relationship was terminated on September 21, 2021 and, in Queen's case, the agency relationship was terminated on September 13, 2021.

It has come to QFS's attention that AAVC, Queen, and/or their respective principals now have agency relationships with Mercury/World and that they have been actively soliciting current agents of QFS, in violation of their Agreements. If they have not provided you copies of their respective Agreements, they should. Or, we can furnish copies upon request if they are unwilling to do so.

QFS intends to enforce its Agreement with each of those former agents and their respective guarantors. As QFS continues to investigate this matter, it is (a) putting Mercury/World on notice so that Mercury/World governs its actions accordingly and so that it may immediately cease and desist from committing or aiding and abetting any conduct that violates the Agreement; and (b) expressly reserving all of its rights and claims under the Agreement and applicable law, including without limitation, its right to seek immediate enforcement of the Agreement, damages, and all other relief to which it is entitled. As it relates to Mercury/World, QFS's position is that, any party with knowledge of the Agreement, that allows or promotes its violation can be held liable for several reasons, including tortious interference with QFS's contractual and business relationships. . . .

. . . .

(Doc. 1-3 PAGEID 65–66). By return correspondence dated November 30, 2021, Mercury, though counsel, denied any wrongdoing. (Doc. 1-4). Counsel for QFS replied on December 8, 2021, enclosing a copy of the Agreement between QFS and Queen. (Doc. 1-5 ("To the extent AAVC, Queen, and/or their principals have not already provided you with copies of their Agreements with QFS, they are enclosed here.")).

**Motion Practice.** On December 10, 2021, QFS filed a Verified Complaint for Temporary Restraining Order, Injunctive Relief, and Damages against Huguely/Queen

for breach of contract[2]; against Huguely/Queen and Mercury for violations of Ohio's Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code § 1333.61–.69[3]; and against Mercury for tortious interference with a contract (the Agreement between Huguely/Queen and QFS)[4]; and against Huguely/Queen and Mercury for tortious interference with business relationships (between QFS and its (current and prospective) agents, owner-operators, drivers, and customers)[5].[6] As required under the local rules,[7] QFS filed a separate Motion for Temporary Restraining Order and Preliminary and Permanent Injunction. (Doc. 8). The Court subsequently allowed QFS the opportunity to supplement its Motion.[8] (Doc. 12). On February 9, 2022, the Court entered a Temporary Restraining Order against Defendants Huguely, Queen, and Mercury (Doc. 31),[9] which expired on March 9, 2022 (Docs. 35, 36). Defendant Mercury filed its Rule 12(b)(2) Motion to Dismiss (Doc. 32) on February 21, 2022.

---

[2] (Verified Complaint, Doc. 1 (¶¶ 46–53, 54–59)).

[3] (Verified Complaint, Doc. 1 (¶¶ 60–72)).

[4] (Verified Complaint, Doc. 1 (¶¶ 73–77)).

[5] (Verified Complaint, Doc. 1 (¶¶ 78–84)).

[6] (Doc. 8 PAGEID 81; Doc. 12 PAGEID 142).

[7] *See* S.D. Ohio Civ. R. 65.1(b).

[8] (12/21/2021 Minute Entry).

[9] The day prior, on February 8, 2022, the Court denied Defendant Huguely's Rule 12(b)(3) Motion to Dismiss, and/or in the alternative, to Transfer Venue to the Northern District of Georgia (pursuant to 28 U.S.C. § 1404(a)) (Doc. 14) and denied as moot her Motion to Strike (for failure to perfect service) (Doc. 26). (Doc. 30). Thereafter, on May 6, 2022, the Court granted QFS's Motion to Dismiss (Doc. 39) Defendant Huguely's Counterclaim (Doc. 27) (for "Discrimination, Breach of Contract and failure to provide the agreed upon services and administration of proper policy and procedure"). (Doc. 45). In the same Opinion and Order, the Court denied (what it construed as) Huguely's motion to set aside the Clerk's March 3, 2022 entries of default against her and Defendant Queen. (*Id.*). Defendants Huguely and Queen, therefore, remain in default.

**Kopec Declaration.**  In support of its Rule 12(b)(2) Motion to Dismiss, Defendant Mercury submits the Declaration of Wladyslaw Kopec.  (Doc. 34).  Kopec is the President (and a shareholder) of Mercury, a third-party motor carrier registered with the United States Department of Transportation.  (*Id.* (¶¶ 1, 2)).  He confirms QFS's allegation in the Verified Complaint[10] that Mercury is a New Jersey corporation with offices in New Jersey.  (*Id.* (¶¶ 3, 4)).  He likewise confirms that Mercury does not own or operate trucking vehicles or provide trucking services, but, rather, like QFS, engages independent contractors as agents to provide these services to its clients.[11]  (*See id.* ¶¶ 5, 6)).  Finally, Kopec confirms that Mercury entered into an independent contractor agreement with Queen (signed by Huguely), neither of them an Ohio citizen.  (*Id.* (¶¶ 21, 23, 24)).  That contract was terminated on January 27, 2022.  (*Id.* (¶ 22)).

Kopec further testifies that Mercury does not: have offices (or affiliates with offices) in Ohio; own or lease property in Ohio; maintain a bank account in Ohio; or have an Ohio-based telephone number.  (*Id.* (¶¶ 8–10; 11; 12)).  None of its employees live (or have performed work) in Ohio and none of the independent contractors who provide motor carrier services on its behalf are located in Ohio.  (*Id.* (¶¶ 14–16)).  Mercury has never entered into a contract in Ohio or entered into a contract containing an Ohio forum selection clause.  (*Id.* (¶¶ 17, 18)).  Mercury does not direct its advertising at Ohio and does not seek to recruit independent contractors in Ohio, to include Ohio truck drivers.  (*Id.* (¶¶ 13, 19, 20)).  Overall, the "vast majority" of motor carrier services performed by independent contractors on Mercury's behalf occur on the east coast of the United States.

---

[10] (Verified Complaint, Doc. 1 (¶ 4)).

[11] *See* (Verified Complaint, Doc. 1 (¶¶ 10, 11, 33)).

(*Id.* (¶ 7)).  And, none of the services performed by Queen or Huguely on Mercury's behalf were provided in Ohio.  (*Id.* (¶¶ 25, 26)).

## II.    LAW AND ANALYSIS

**Personal Jurisdiction Standard.**    Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may seek dismissal if the court lacks personal jurisdiction over that defendant.  "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists."  *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)).  In the face of a supported motion to dismiss, the plaintiff may not rest on its pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)).  When a court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, as the Court does here, it must consider the pleadings and affidavits in the light most favorable to the plaintiff.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  In such an instance, the plaintiff "'need only make a prima facie showing of jurisdiction.'"  *Bird*, 289 F.3d at 871 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)).  And the court may not weigh "the controverting assertions of the party seeking dismissal."  *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen*, 935 F.2d at 1459).[12]

---

[12] "We adopted this rule . . . in order to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts[.]"  *Theunissen*, 935 F.2d at 1459.

"Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird*, 289 F.3d at 873 (citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (1992)); *see Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (summarizing prior decisions as "recognizing two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.") (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird*, 289 F.3d at 873 (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). As recently described by the Supreme Court, "[a] state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co.*, 141 S. Ct. at 1024 (citing *Goodyear*, 564 U.S. at 919)).

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* at 1024. "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Yet even then—because the defendant is not 'at home'—the forum State may exercise jurisdiction in only certain cases." *Id.* at 1025. That is, "[t]he plaintiff's claims 'must arise out of or relate to the defendant's contacts' with the forum." *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (but omitting alterations))); *see Bird*, 289 F.3d at 874

7

(specific jurisdiction proper only "in a suit arising out of or related to the defendant's contacts with the forum[ ]") (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997) (citation omitted)). "Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (citing *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St. 3d 81, 930 N.E.2d 784, 790, at ¶ 28 (2010); *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235, 638 N.E.2d 541, 543 (1994)).

Recent changes to the text of the long-arm statute—effective prior to the date QFS filed suit—require a brief discussion. *See Amatech Grp. Ltd. v. Fed. Card Servs., LLC*, No. 1:21-cv-406, 2022 WL 44674, at *4 (S.D. Ohio Jan. 5, 2022).  A previous version of Ohio's long-arm statute provided that a court could exercise personal jurisdiction over a non-resident defendant under one (or more) of nine circumstances (set forth in § 2307.382(A)) followed by the admonition (contained in § 2307.382(C)) that "[w]hen jurisdiction over a person is based solely upon this section, **only a cause of action arising from acts enumerated in this section** may be asserted against him." 1988

Ohio Laws File 210 (Am. Sub. H. B. 90) (emphasis added).[13]  The Ohio General Assembly has since amended the long-arm statute "to expand the basis of a court's exercise of personal jurisdiction to include any basis consistent with the Ohio Constitution and the United States Constitution[.]"  https://www.legislature.ohio.gov/legislation/legislation-summary?id=GA133-HB-272 (effective December 16, 2020) (last visited 5/18/2022); *see also*  https://www.legislature.ohio.gov/legislation/legislation-summary?id=GA133-SB-10 (effective April 7, 2021) (last visited 5/18/2022).  It did so by deleting the admonitory text of division (C) and replacing it with, "In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution."  *See* Ohio Rev. Code § 2307.382(C).  In the wake of this amendment, several federal district courts in Ohio[14] have concluded that Ohio's long-arm statute is now coterminous with federal constitutional limits.  *Amatech*, 2022 WL 44674, at *5 (collecting cases); *cf. Shepard & Assocs., Inc. v. Lokring Tech., LLC*, No. 1:20-CV-02488-PAB, 2022 WL 312711, at *6 & n.9 (N.D. Ohio Feb. 2, 2022) ("[I]t is unclear whether Ohio's long-arm statute [as amended in April 2021] is coterminous with federal constitutional limits[.]").

One court in the Southern District, however, has concluded that the new language in division (C) "only comes into play if the party is instead asserting *general* jurisdiction."

---

[13] Consequently, courts often construed the statute "as foreclosing general jurisdiction[.]"  *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 827 n.2 (S.D. Ohio 2021) (citing *Conn*, 667 F.3d at 717 ("Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute.")).

[14] To the Court's knowledge, no Ohio appellate court has yet to construe division (C)'s recently amended language.

*Amatech*, 2022 WL 44674, at *5 (citing *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 827 n.2 (S.D. Ohio 2021)) (emphasis in original). If "a party is asserting some form of *specific* jurisdiction, the party must still show that the suit arises from one of the enumerated acts in [division] (A)." *Amatech*, 2022 WL 44674, at *5 (emphasis in original).

QFS "does not contend that there is general personal jurisdiction" over Mercury in Ohio. (Doc. 37 PAGEID 388). As was the case in *Amatech*, then, it is unnecessary for the Court to decide which interpretation of the amendment to division (C) is correct. *Amatech*, 2022 WL 44674, at *5; *see FocusPoint Int'l, Inc. v. Baldeo*, No. 1:20-cv-2019, 2022 WL 1461931, at n.7 (N.D. Ohio Mar. 8, 2022), *report & recommendation adopted*, 2022 WL 1210284 (N.D. Ohio Apr. 25, 2022). Rather, as its memorandum in opposition clarifies,[15] QFS asserts specific personal jurisdiction against Mercury based on one of the nine circumstances enumerated in division (A). (Doc. 37 PAGEID 388–89). According to QFS, this Court can exercise personal jurisdiction over Mercury for "[c]ausing tortious injury in this state to any person **by an act outside this state** committed with the purpose of injuring persons, **when the person might reasonably have expected that some person would be injured thereby in this state**[.]" *See* Ohio Rev. Code § 2307.382(A)(6) (emphases added). The Court need not reach this issue, however,

---

[15] The Verified Complaint does not address personal jurisdiction vis-à-vis Mercury. As to the other two defendants, QFS states, "[a]t all times relevant hereto, Queen and Huguely have each purposely availed themselves to the jurisdiction of the state and federal courts of Ohio." (Verified Complaint, Doc.1 (¶ 5)). "Specifically, Queen, Huguely, and QFS are parties to a contract entered in Ohio and requiring that disputes related to, or arising from, the contract be filed in state or federal courts located in Hamilton County, Ohio (see the 'Agreement for Regional Business Development,' attached hereto as Exhibit 1)." (*Id.*).

because it finds that the exercise of specific personal jurisdiction over Defendant Mercury would not comport with due process.

**Due Process Clause Analysis.** QFS argues that the Court has personal jurisdiction over Mercury because Mercury interfered with QFS's restrictive covenants with Huguely and Queen, "knowingly causing damage to QFS in Ohio." (Doc. 37 PAGEID 386). By virtue of providing Mercury with a copy of the Agreement, in which the forum selection clause[16] is found, "Mercury was on notice of this provision—both actually and constructively—and was aware that it was interfering with an Ohio contract through its affiliation with Huguely and Queen." (*Id.* PAGEID 387). This premise, however, runs contrary to established Supreme Court precedent.

At issue in *Walden v. Fiore* was "whether a court in Nevada may exercise personal jurisdiction over a defendant on the basis that he knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada." 571

---

[16] Paragraph 28(A) of the Agreement discusses "Governing Law" and "Venue" and reads as follows:

> Contractor and Guarantor(s) understand and acknowledge that Carrier is organized under Nevada law and has its headquarters, and conducts substantial business and operations, in Ohio where it is registered to do business. Contractor further acknowledges and agrees that its performance under this Agreement is due and owing to Carrier, and that a substantial portion of the duties and obligations of the Parties are to be performed in, Hamilton County, Ohio. Accordingly, this Agreement shall be governed by Ohio law, without reference to Ohio's principles of conflicts of laws. The Parties voluntarily consent and agree to the exclusive jurisdiction of the state or federal courts located in Hamilton County, Ohio, over any action, suit, or proceeding arising out of or relating to this Agreement. The Parties further waive any objection to the venue of any such action, suit, or proceeding brought in any such court, and waive any claim that any such action, suit, or proceeding has been brought in an inconvenient forum.

(Doc. 1-1 PAGEID 37).

U.S. 277, 279 (2014). A unanimous court held no, "[b]ecause the defendant had no other contacts with Nevada, and because a plaintiff's contacts with the forum State cannot be 'decisive in determining whether the defendant's due process rights are violated[.]'" *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). "*Calder* [*v. Jones*, 465 U.S. 783 (1984)] made clear that mere injury to a forum resident is **not** a sufficient connection to the forum." *Id.* at 290 (emphasis added). "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* "**The proper question is not where the plaintiff experienced a particular injury or effect** but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* (emphasis added).

The jurisdictional facts set forth in the Kopec Declaration are unchallenged by QFS. They establish that Mercury, like the defendant in *Walden*, has *no* contacts—much less *meaningful* contacts—with Ohio. This Court, therefore, cannot exercise personal jurisdiction over Mercury because it would violate federal due process. *Id.* at 291 ("Well-established principles of personal jurisdiction are sufficient to decide this case. . . And **it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State**. . . [T]he mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.") (emphasis added); *Campinha-Bacote v. Wick*, No. 1:15-cv-277, 2015 WL 7354014, at *4–5 (S.D. Ohio Nov. 20, 2015) (allegations that a defendant knew that injury would occur in Ohio are insufficient to establish minimum contacts with Ohio for purposes of the due process analysis) (citing *Maxitrate Tratamento Termico e Controles v. Super Sys., Inc.*, 617 F. App'x 406, 408–09 (6th Cir. 2015) (quoting *Walden*))).

QFS cites *Scotts Co. v. Aventis S.A.* for the proposition that "if Mercury 'purposefully directed activities at a resident of Ohio that caused consequences in the forum state[, . . .] they therefore should have reasonably foreseen that they could be haled into an Ohio court as a result.'" 145 F. App'x 109, 115 (6th Cir. 2005). The Sixth Circuit applied what it called the "effects test" of *Calder* to reach this result. Ten years later, however, the Sixth Circuit acknowledged that, in *Walden*, the Supreme Court "rejected that theory of personal jurisdiction (and that interpretation of *Calder*)." *Maxitrate Tratamento Termico e Controles*, 617 F. App'x at 408–09. And, two years later (in 2017) in a published opinion, the Sixth Circuit clarified that *Walden* "holds that an out-of-state injury to a forum resident, standing alone, cannot constitute purposeful availment." *Schmückle*, supra, 854 F.3d at 901.[17]

---

[17] Based on the facts before it, the Sixth Circuit determined that the plaintiffs had made a *prima facie* showing that the district court could exercise personal jurisdiction over defendant Schmückle:

> We have had only one occasion to consider *Walden*'s impact. In doing so, we held that a Brazilian insurance company, which operated only in Brazil, lacked minimum contacts with Ohio where it was sued for breach of contract after refusing to indemnify a judgment against one of its clients. *Maxitrate Tratamento Termico e Controles v. Super Sys., Inc.*, 617 F. App'x 406, 407 (6th Cir. 2015). We refused to find purposeful availment on the sole basis that the Brazilian insurer knew its refusal to indemnify would have effects in Ohio because doing so would have allowed the plaintiffs to create jurisdiction on the basis of **their** contacts, not the defendant's. *Id.* at 409.

> Schmückle argues that because he targeted his conduct only at plaintiffs and not at Michigan itself, *Walden* forecloses a finding of purposeful availment. Plaintiffs argue that "causing consequences" in Michigan is still sufficient to establish purposeful availment because *Walden* limited, but did not clearly overrule, the Court's prior decision in *Calder*. Neither party is entirely correct. *Walden* simply holds that an out-of-state injury to a forum resident, standing alone, cannot constitute purposeful availment. *See Walden*, 134 S. Ct. at 1123–24. The implications of Schmückle's position are untenable and represent an overly broad reading of *Walden*. It would severely limit the availability of personal jurisdiction if every defendant could simply frame his conduct as targeting only the plaintiffs and not the forum state. Schmückle seems to recognize as much by admitting that his relationship with MAG operations in Michigan "is a contact with Michigan." CA6 R. 22, Appellee Br., at 17.

Without the required "purposeful availment" contacts, any exercise of specific personal jurisdiction by this Court over Defendant Mercury would violate due process. Having reached this conclusion, the analysis ends. *Conn*, *supra*, 667 F.3d at 711–12 ("Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa.") (citing, *inter alia*, *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721, 724 (6th Cir. 2000) (dismissing for lack of personal jurisdiction based solely on due process grounds)).

## III.     CONCLUSION

Defendant Mercury Transportation's Motion to Dismiss (Doc. 32) the Complaint, filed pursuant to Fed. R. Civ. P. 12(b)(2), is hereby **GRANTED**.

**IT IS SO ORDERED.**

                                               */s/ Michael R. Barrett*
                                                JUDGE MICHAEL R. BARRETT

---

We need not define the exact scope of *Walden* and its effect on *Calder* in order to resolve this case. **It is enough to say that plaintiffs must do more than claim that Schmückle's actions affected them in Michigan and must show that Schmückle had some level of contact with the state**, and that Schmückle cannot avoid jurisdiction by framing all of his activities as contacts with plaintiffs—who happen to be in Michigan—instead of contacts with Michigan itself. Furthermore, Schmückle's trips to Michigan and the fact that he held himself out as the MAG Group's global CEO are sufficient to distinguish this case from *Walden*.

*Schmückle*, 854 F.3d at 900–01 (first emphasis in original, second emphasis added).